```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ANTOINE BROWN,

                Plaintiff,

        -against-                                              COMPLAINT

PATRICK CHILTON, in his individual capacity,
(FNNK) BRETON, in his individual capacity, and
THE CITY OF NEW YORK,

                Defendants.

Demand for Jury Trial
------------------------------------------------------------X
```

CV 12 - 3483

BRODIE, J.

REYES, M.J.

Plaintiff, Antoine Brown, by and through his attorneys LeBow & Associates, PLLC, complains of the Defendants, and each of them, as follows:

## I. PRELIMINARY STATEMENT

Plaintiff Antoine Brown brings this action under 42 USC §§1983 and 1988 to redress Defendants' violations of the rights and immunities secured to Plaintiff by the United States Constitution. Defendants Chilton and Breton are both New York City police officers, who at all times mentioned herein were acting under color of state law. Plaintiff alleges that Chilton and Breton falsely arrested him and maliciously prosecuted him, all because they acted without confirming his identity, and wrongly blamed him for another individual's actions. Plaintiff asserts a claim against the City of New York based upon entity liability, and alleges that the City of New York maintained certain policies, customs, and practices regarding the hiring, training, supervision, and disciplining of police officers that demonstrated a deliberate indifference towards the constitutional rights of Plaintiff and others, and that directly and proximately caused the violation of Plaintiff's Fourth Amendment rights. Plaintiff seeks compensatory damages

from Chilton, Breton, and the City of New York, and punitive damages from Chilton and Breton.

## II. JURISDICTION AND VENUE

1. This Court has federal question jurisdiction over the federal civil rights claims asserted herein against Defendants Chilton, Brown, and the City of New York pursuant to 28 U.S.C. §§1331 and 1343(a)(3). Venue in this district is proper because a substantial part of the events giving rise to the claims described herein occurred in the Eastern District of New York.

## III. PARTIES

2. At all times relevant herein, Plaintiff Antoine Brown was a resident of Brooklyn, New York, residing at 650 Stanley Avenue, 6B, Brooklyn, NY 11207, and a citizen of the United States.

3. At all times relevant herein, Defendant Patrick Chilton was a police officer employed by the New York City Police Department ("NYPD"), and assigned to the 83rd Precinct in the Bushwick neighborhood of Brooklyn.

4. At all times relevant herein, Defendant (FNNK) Breton was a police officer employed by the NYPD, and assigned to the 83rd Precinct.

5. At all times relevant herein, The City of New York was a municipal corporation existing under the laws of the State of New York. As such, it maintains a police department, and has enacted rules, regulations, and policies as well as maintaining customs and practices concerning the hiring, termination, training, discipline and the conduct of the officers it employs.

## IV. STATEMENT OF FACTS

2

6. At all times relevant herein, Plaintiff Antoine Brown ("Plaintiff") was a resident of Brooklyn, New York, residing at 650 Stanley Avenue, 6B, Brooklyn, NY 11207.

7. At all times relevant herein, Defendant Patrick Chilton ("Chilton") was an NYPD officer assigned to the 83rd Precinct.

8. At all times relevant herein, Defendant (FNNK) Breton ("Breton") was an NYPD officer assigned to the 83rd Precinct.

9. On or about August 16, 2011, at around 9:30 PM, Bernard Downes was arguing with Richard Nelson's younger brother inside the gate of 13 Covert Street in the Bushwick neighborhood of Brooklyn, NY.

10. On information and belief, Richard Nelson saw Downes yelling at Nelson's younger brother, told Downes to leave, and escorted him out of the gate.

11. On information and belief, Nelson closed the gate and went inside the building.

12. On information and belief, Nelson then heard several people arguing with his brother.

13. On information and belief, Nelson came back outside and saw Downes, Dennis Serrano, and John Doe inside the gate. Doe had two missing teeth, and had the nickname "Champ".

14. On information and belief, Serrano was about to punch Nelson's brother, Nelson approached Serrano, and Serrano hit Nelson instead.

15. On information and belief, Serrano and Downes then attacked Nelson.

16. On information and belief, Doe then punched Nelson in the face with an object, causing Nelson to sustain a fractured jaw and missing teeth.

17. On information and belief, Nelson's mother Julia Lugo-Williams then came on the scene.

3

18. On information and belief, Doe then punched Lugo-Williams in the face, causing her to need stitches.

19. On information and belief, Downes, Serrano, and Doe then fled.

20. On information and belief, the police then arrived on the scene.

21. On information and belief, Nelson and Lugo-Williams went with the police to search the area for Downes, Serrano, and Doe, and pointed out Serrano and Downes nearby. The officers then arrested Serrano and Downes.

22. On or about August 17, 2011, Nelson saw Doe walking in the area, and called police and gave a description of what Doe was wearing: a white shirt and grey pants.

23. On or about August 17, 2011, at around 8:45 PM, Brown was walking near where the incident with Downes, Serrano, and Doe happened the day before, and was wearing a white shirt and grey pants.

24. On or about August 17, 2011, at around 8:45 PM, Chilton and Breton stopped Brown and five other people near where the incident with Downes, Serrano, and Doe happened the day before. Chilton and Breton asked the six men for their IDs, and only Brown and one other had IDs. The four men without IDs were told they were free to go. Chilton and Breton said that Brown had an outstanding warrant, but Brown did not actually have an outstanding warrant.

25. On or about August 17, 2011, Chilton arrested Brown. Chilton and Breton did not tell Brown why he was being arrested.

26. On or about August 18, 2011, Chilton completed a criminal complaint against Brown that charged Brown with assault in the second and third degree, menacing in the second and third degree, criminal mischief in the fourth degree, criminal possession of a weapon in the fourth degree, criminal trespass in the third degree, trespass, and harassment in the second degree. The

4

criminal complaint against Brown and the charges therein were all based on Doe's actions in the incident involving Downes, Serrano, and Doe.

27. On or about August 18, 2011, Brown's attorney told him what he was being accused of, and Brown made clear that he had nothing to do with the incident involving Downes, Serrano, and Doe, and that it was a case of mistaken identity. Brown told his attorney that he wanted to appear before the grand jury, because if Nelson and Lugo-Williams saw him, they would know that he was not the person who attacked them. However, Brown's attorney told Brown that he didn't think it would be to his advantage to appear before the grand jury, and did not allow him to appear.

28. On or about August 19, 2011, the grand jury indicted Brown, Downes, and Serrano on charges of attempted assault in the first degree, assault in the second degree, assault in the third degree, and menacing in the third degree, for their alleged attack on Nelson, and Brown was also indicted on charges of assault in the second and third degree for his alleged attack on Lugo-Williams.

29. On or about August 26, 2011, Brown's mother and girlfriend went to Nelson and Lugo-Williams and showed them a picture of Brown, and they agreed that Brown was not the person who attacked them.

30. On or about August 26, 2011, Brown's mother and girlfriend then went to the police and told them that Nelson and Lugo-Williams had agreed that Brown was not the person who attacked them. The police said that they would handle it, but Brown's mother and girlfriend never heard back from the police.

31. On or about September 2, 2011, Brown's mother and girlfriend went to the Kings County District Attorney's office and told them that Nelson and Lugo-Williams had agreed that

Brown was not the person who attacked them. The district attorney's personnel said that they would take care of it, but that they needed paperwork before Brown could be released.

32. On or about September 29, 2011, Brown was released, but prior to his release was arraigned again on lesser charges.

33. On information and belief, Brown had to attend two more court appearances before his charges were finally dropped on December 19, 2011.

34. On information and belief, Brown was never put in a lineup.

35. On information and belief, Brown and Doe could not be reasonably confused for one another. Among other things, Doe's missing teeth are clearly visible, while Brown has all of his teeth.

## V. FIRST CAUSE OF ACTION - CIVIL RIGHTS AND CONSTITUTIONAL VIOLATIONS
### (Against Defendants Chilton and Breton)

36. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 35 of this Complaint with the same force and effect as though fully set forth herein.

37. As a result of the actions of Defendants Chilton and Breton, which began on or about August 17, 2011, Plaintiff was deprived of his rights under the United States Constitution and federal civil rights law. Plaintiff's rights are secured by provisions of the Fourth Amendment and 42 U.S.C. §1983.

38. The actions of Defendants Chilton and Breton were committed under the color of law and were intentional and willful.

39. On or about August 17, 2011, Defendants Chilton and Breton intended to confine Plaintiff.

40. On or about August 17, 2011, Plaintiff was conscious of being confined.

41. On or about August 17, 2011, Plaintiff at no time consented to being confined by Defendants Chilton and Breton, but nonetheless cooperated with them because they were NYPD officers acting in an official capacity.

42. That at the time of Plaintiff's arrest on August 17, 2011, Chilton and Breton knew or should have known that Plaintiff was not John Doe, since the only information they had linking Plaintiff to the incident with Downes, Serrano, and Doe was that he was wearing a white shirt and grey pants, and had they asked Nelson, Lugo-Williams, Downes, or Serrano, any of those individuals would have told Chilton and Breton that Plaintiff was not John Doe from the incident.

43. In view of the fact that Chilton and Breton knew or should have known that Plaintiff was not John Doe, and had no reason to believe that Plaintiff had committed any other crime, they therefore did not possess knowledge sufficient for a reasonable person to believe that Plaintiff was committing or had committed a crime at the time of his arrest.

44. In view of the fact that Defendants Chilton and Breton did not possess information upon which a reasonable person could have believed that Plaintiff had committed or was committing a crime at the time of arrest, Defendants Chilton and Breton did not have probable cause to arrest and confine Plaintiff.

45. That neither on nor about August 17, 2011, nor at any other relevant time herein, did Defendants Chilton and Breton possess a warrant for Plaintiff's arrest and confinement.

46. That neither on nor about August 17, 2011, nor at any other relevant time herein, did such a warrant for Plaintiff's arrest and confinement exist.

47. In view of the fact that Defendants Chilton and Breton intended to confine Plaintiff,

Plaintiff was conscious of his confinement, Plaintiff did not consent to his confinement, and the confinement was not privileged since it was not conducted pursuant to a warrant or probable cause, Plaintiff's confinement was therefore unlawful and actionable under 42 U.S.C. §1983.

48. The actions of Defendants Chilton and Breton amounted to false arrest and false imprisonment under 42 U.S.C. §1983 and the Fourth Amendment of the United States Constitution.

49. As a direct and proximate result of Plaintiff's false arrest and false imprisonment, Plaintiff was caused to suffer imprisonment for 43 days, a loss of freedom and liberty, great mental anguish, emotional distress, and public humiliation, and was further caused to experience fear of physical harm and violence, and to incur attorney's fees and expenses.

50. On or about August 18, 2011, Chilton initiated charges against Plaintiff for assault in the second and third degree, menacing in the second and third degree, criminal mischief in the fourth degree, criminal possession of a weapon in the fourth degree, criminal trespass in the third degree, trespass, and harassment in the second degree, all based on the actions of Doe, when Chilton knew or should have known that Plaintiff was not Doe.

51. On or about December 19, 2011, the judge dropped all of the charges against Plaintiff.

52. That at the time Plaintiff was charged on August 18, 2011, Chilton knew or should have known that Plaintiff was not John Doe, since the only information he had linking Plaintiff to the incident with Downes, Serrano, and Doe was that he was wearing a white shirt and grey pants at the time of his arrest, and had he asked Nelson, Lugo-Williams, Downes, or Serrano, any of those individuals would have told Chilton and Breton that Plaintiff was not John Doe from the incident.

8

53. In view of the fact that Chilton knew or should have known that Plaintiff was not John Doe, and had no other reason to believe that Plaintiff had committed of the charged crimes, he therefore did not possess knowledge sufficient for a reasonable person to believe that Plaintiff had committed any of the charged crimes.

54. Defendant Chilton initiated charges against Plaintiff due to seeking retaliation against Plaintiff, or otherwise other than for the motive of obtaining justice in accordance with the law.

55. Defendant Chilton's initiation of criminal proceedings against Plaintiff on the above charges without probable cause and with a motive other than obtaining justice was an act of actual malice against Plaintiff.

56. Plaintiff suffered post-arraignment restrictions on his liberty when he was imprisoned for 43 days and had to attend numerous court hearings for nearly three additional months before the charges against him were finally dropped.

57. The actions of Defendant Chilton amounted to malicious prosecution under 42 U.S.C. §1983 and the Fourth Amendment of the United States Constitution.

58. As a direct and proximate result of Plaintiff's malicious prosecution, Plaintiff was caused to suffer imprisonment for 43 days, a loss of freedom and liberty, great mental anguish, emotional distress, and public humiliation, and was further caused to experience fear of physical harm and violence, and to incur attorney's fees and expenses.

## VI. SECOND CAUSE OF ACTION - STATE LAW FALSE IMPRISONMENT
**(Against Defendants Chilton and Breton)**

59. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 58 of this Complaint with the same force and effect as though fully set

forth herein.

60. The actions of Defendants Chilton and Breton as set forth in Paragraphs 39 through 47 amounted to false imprisonment under New York State law.

61. As a direct and proximate result of Plaintiff's false imprisonment, Plaintiff was caused to suffer imprisonment for 43 days, a loss of freedom and liberty, great mental anguish, emotional distress, and public humiliation, and was further caused to experience fear of physical harm and violence, and to incur attorney's fees and expenses.

## VII. THIRD CAUSE OF ACTION - STATE LAW MALICIOUS PROSECUTION
### (Against Defendant Chilton)

62. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 61 of this Complaint with the same force and effect as though fully set forth herein.

63. The actions of Defendant Chilton as set forth in Paragraphs 50 through 56 amounted to malicious prosecution under New York State law.

64. As a direct and proximate result of Plaintiff's malicious prosecution, Plaintiff was caused to suffer imprisonment for 43 days, a loss of freedom and liberty, great mental anguish, emotional distress, and public humiliation, and was further caused to experience fear of physical harm and violence, and to incur attorney's fees and expenses.

## VIII. FOURTH CAUSE OF ACTION- CIVIL RIGHTS AND CONSTITUTIONAL VIOLATIONS
### (Entity liability against Defendant City of New York)

65. Plaintiff repeats, reiterates, and realleges each and every allegation contained in

10

paragraphs 1 through 64 of this Complaint with the same force and effect as though fully set forth herein.

66. On information and belief, responsible officials of the City of New York maintained customs, policies, and practices regarding the supervision and/or training of NYPD officers that led to the deprivations of Plaintiff's Fourth Amendment rights as alleged herein.

67. Responsible officials of Defendant City of New York knew or should have known that if they failed to supervise or train NYPD officers effectively so as to prevent them from failing to confirm the identity of individuals they were arresting and charging, the obvious consequence would be that some officers would nonetheless engage in such conduct for various reasons other than to achieve justice in accordance with the law, such as to close an investigation faster, to make arrests and secure prosecutions in order to advance their careers, or to gain media attention by making arrests in high-profile cases.

68. In light of the above, responsible officials of Defendant City of New York knew to a moral certainty that NYPD officers would frequently confront situations in which there were powerful incentives to arrest and charge a suspect without confirming that suspect's identity.

69. Responsible officials of Defendant City of New York knew that when NYPD officers confront situations in which there were powerful incentives to arrest and charge a suspect without confirming that suspect's identity, if those officers were properly supervised and disciplined they would almost always be deterred from arresting and charging suspects without confirming their identity due to the understanding that they would be held liable if they do so, and if those officers were properly trained, they would be fully aware of (A) when it is legal to arrest and charge a suspect, and the proper procedures for confirming a suspect's identity both prior to arrest, upon arrest, and upon entering charges, (B) their responsibilities under the law

to ensure that they have the correct individual before arresting and charging that individual, and (C) the consequences they would face for wrongfully arresting and charging individuals due to failing to confirm their identity.

70. Responsible officials of Defendant City of New York knew that the consequence of NYPD officers charging individuals without confirming their identity would be the deprivation of the constitutional rights of citizens, such as unlawful arrests, malicious prosecutions, and wrongful imprisonment of citizens, thereby violating those citizens' Fourth Amendment rights.

71. In light of fact that the responsible officials of Defendant City of New York knew or should have known that if they failed to supervise the officers of the NYPD effectively so as to prevent them from violating the constitutional rights of individuals by arresting and charging individuals without confirming their identity, the obvious consequence would be that some officers would arrest and charge individuals without confirming their identify for various reasons other than achieving justice in accordance with the law, said officials had a duty to supervise and/or train NYPD officers effectively, and said officials' failure to do so represents a deliberate indifference to the constitutional rights of Plaintiff and other individuals who were unlawfully arrested or falsely charged due to mistaken identity.

72. As a direct and proximate result of the aforesaid acts of responsible officials of Defendant City of New York, Plaintiff was falsely arrested and wrongfully charged, was imprisoned for 43 days, had to attend numerous court appearances over a period of five months, and thereby suffered a deprivation of his rights under the Fourth Amendment to the United States Constitution, great mental anguish, emotional distress, and public humiliation, and was further caused to experience fear of physical harm and violence, and to incur attorney's fees and expenses.

73. As a result of the foregoing, Plaintiff sustained the damages previously described, and seeks compensatory damages from the City of New York.

WHEREFORE Plaintiff demands judgment against each of Chilton and Breton in the amount of One Million Dollars ($1,000,000.00) in compensatory damages and Five Million Dollars ($5,000,000.00) in punitive damages on the first, second, and third causes of action, against the City of New York in the amount of One Million Dollars ($1,000,000.00) in compensatory damages on the fourth cause of action, together with attorneys' fees, and the costs and disbursements associated with bringing this action.

Dated: New York, New York
       July 13, 2012

Respectfully submitted,

LEBOW & ASSOCIATES, PLLC

James B. LeBow, Esq. (JL4535)
570 Lexington Avenue, 16th Floor
New York, New York 10022
Tel. (212) 868-3311
Fax (646) 619-4555